IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| TINA MITCHAM On Behalf of HERSELF and All Others Similarly Situated, | ) ) | |
| | ) | COLLECTIVE AND CLASS ACTION |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:17-cv-00703 |
| | ) | |
| INTREPID U.S.A., INC., AND F.C. OF KENTUCKY, INC., d/b/a INTREPID USA HEALTHCARE SERVICES, | ) ) ) | JUDGE BOOM JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SECTION 216(b) SETTLEMENT

---

### I.   INTRODUCTION

Intrepid U.S.A., Inc. and F.C. of Kentucky ("Intrepid" or "Defendant") and Plaintiff [1] have reached a comprehensive settlement in this case. They have filed a Joint Motion for Approval of Section 216(b) Settlement. (Doc. #50.) For the reasons that follow, the Parties' motion should be **GRANTED**.

### II.   SUMMARY OF SETTLEMENT TERMS

The Parties' settlement agreement (the "Agreement") contains several salient components. Such components include in part (1) payments to members of the Section 216(b) Plaintiffs in exchange for releases and dismissals; (2) payments to "Rule 23 Class Members"; and (3) payment of Plaintiffs' attorneys' fees and expenses. These components, as well as additional terms of the

---

[1] The term "Plaintiffs" in this memorandum refers to Named Plaintiff Tina Mitcham and the 8 Opt-In Plaintiffs. The Plaintiffs and Intrepid are referred to in this memorandum as the "Parties."

Agreement, are discussed below. A copy of the Agreement is attached to this Memorandum as **Exhibit 1**.[2]

### A. Payments to the Section 216(b) Plaintiffs.

The Section 216(b) Plaintiffs, referred to as the Original Class Members in the Settlement Agreement, consist of the 8 individuals, including the Named Plaintiff, Tina Mitcham, who are current or former non-exempt home health workers at Intrepid in Kentucky (1) who worked at any time since April 18, 2015; (2) whose pay was computed on a fee per visit basis; and (3) who filed consents to join the present lawsuit brought by Named Plaintiff Tina Mitcham. The Section 216(b) Plaintiffs will be referred to as the "Original Class Members" in this memorandum as they are in the Agreement. The term "Opt-In Plaintiffs" refers to the Opt-In Plaintiffs excluding the Named Plaintiff.

As part of the Agreement, Intrepid will pay an aggregate gross amount of $23,000 to the Original Class Members. Each Opt-In Plaintiff's payment is based on a determination of overtime compensation calculated by including alleged unrecorded compensable travel time and other alleged unrecorded work time, including time spent charting for patients outside of their in-home visits. *See* Declaration of David Garrison, attached here to as **Exhibit** 2, at ¶¶ 10 and 12.  Class Counsel surveyed time estimates from the Opt-In Plaintiffs, and submit that the Opt-In Plaintiffs' payments are sufficient to account for this alleged unrecorded work time.. *Id.*  Exhibit A to the Agreement (attached hereto as **Exhibit 1**) reflects the gross[3] amounts of the payments that will be

---

[2] Various terms are defined in the Agreement. These defined terms are at times used in this memorandum. The Parties refer the Court to the Agreement for the definition of defined terms.

[3] These amounts include the employer and employee share of any required applicable federal, state and local taxes associated with the settlement payments to the Original Class Members that will be subtracted and withheld, respectively, from the Original Class Members Settlement Fund before the final amounts of the payments to the Original Class Members are paid by the Settlement Claims Administrator

made to each individual Opt-In Plaintiff. Named Plaintiff will receive an additional $7,000.00 for her efforts in serving as Named Plaintiff in this action, subject to this Court's approval.[4]

In exchange for Intrepid making these payments, the Original Class Members agree to release Intrepid and various related entities and persons from claims for unpaid wages, penalties, liquidated damages, costs, attorneys' fees, and any other relief under the Fair Labor Standards Act ("FLSA"), the Kentucky Wages and hours Act, KY. Rev. Stat. § 337.010 et seq., Ky. Rev. Stat. § 446.070 based on the facts and allegations set forth in the Complaint in this action.  The exact terms of the release are set forth in the Agreement.

### B.  Payment to the Rule 23 Class Members.

The remaining claims in this action brought by the Named Plaintiff seek recovery of overtime pay under the Kentucky Wages and Hours Act brought as a Rule 23 class action. On May 30, 2018, this Court, upon stipulation of the parties, conditionally certified the FLSA collective action. Plaintiff had not yet filed a motion for class certification of a a Rule 23 class for purposes of the Kentucky Wages and Hours Act at the time the parties reached their agreement to resolve this case.

After a mediation in Nashville, Tennessee on November 13, 2018, and notwithstanding their adversarial positions in this matter, the Named Plaintiff, on behalf of the Opt-In Plaintiffs, and Intrepid have, with the Mediator Michael Russell's assistance, negotiated a settlement of this case. The terms of the proposed settlement are set forth, in their entirety, in the Agreement.[5] The Settlement is the product of arms-length negotiations that occurred during mediation by a private

---

[4]      Briefing in support of this service payment to the Named Plaintiff is contained in the Memorandum in Support of Joint Motion for Order Preliminarily Approving Rule 23 Class Action Settlement filed contemporaneously herewith.
[5] A Motion to Preliminarily Approve the Rule 23 Settlement will be filed separately.

mediator, along with several weeks of negotiations following the mediation, and is a fair, reasonable, and adequate resolution of the claims in this matter.

The Parties have agreed to a two-part settlement structure, in which they will seek Court approval for (1) a settlement for the Original Class Members wherein in exchange for individual payments from a $23,000.00 Section 216(b) Settlement Fund they release their FLSA and Kentucky claims as set forth in the Agreement; and (2) a Rule 23 Kentucky Wages and Hours Act class action settlement that will settle the Kentucky Wages and Hours Act claims as set forth in the Agreement of any non-exempt home health workers employed by Defendants in the position of Licensed Practical Nurse, Physical Therapy Assistant, Certified Occupational Therapy Assistant, or Home Health Aide at any of Defendants' Kentucky locations on a full time basis, excluding the Original Class Members, (and who were paid on a fee basis) during the time-frame set forth in the Agreement, and who did not timely opt-out of the Rule 23 settlement. The settlement of the Rule 23 Class involved a Rule 23 Settlement Fund of $174,500 that will be paid to 134 class members pursuant to the terms and allocations described in the Agreement.

This Motion seeks Court approval only to the extent that the Agreement pertains directly to the Original Class Members and their claims under the FLSA. A separate Joint Motion for Order Preliminarily Approving Rule 23 Class Action Settlement pertaining to the portions of the Agreement regarding the Rule 23 Class Members is being filed simultaneously with this Motion.

### C.  Payment of Attorneys' Fees and Expenses

As part of the Agreement, Intrepid will pay Plaintiffs' attorneys' fees and expenses in the total amount of $142,500.00. Intrepid will pay such amount separate from and in addition to the 216(b) Settlement Fund and Rule 23 Settlement Fund.

For the following reasons, the Court should find that the Agreement as to the compromise of the Original Class Members' claims is fair, reasonable, and adequate and should approve the same.

### III.    THE AGREEMENT SHOULD BE APPROVED BY THIS COURT.

"Before approving a settlement, a district court must conclude that it is fair, reasonable and adequate*." Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). This case was brought as a collective action pursuant to § 216(b) of the FLSA and a Rule 23 class action under the Kentucky Wages and Hours Act. The collective action procedure under the FLSA differs from the class action procedure under Rule 23 of the Federal Rules of Civil Procedure, as each employee in an FLSA collective action must provide consent in writing to join the action. "The Court's role in this situation is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23, and derives from the special character of the substantive labor rights involved." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008).

To protect against settlements that allow substandard wages to persist, courts have held that private parties typically may not settle an FLSA action absent court approval or supervision by the Secretary of Labor. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-7 (1945); *Copeland v. ABB, Inc*., 521 F.3d 1010, 1014 (8th Cir. 2008). "The court must determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Crawford v. Lexington- Fayette Urban County Gov't*, Case No. 06-299-JBC, 2008 WL 4724499, *2 (E.D. Ky. Oct. 23, 2008) (quoting Collins, 568 F.Supp.2d at 718 and *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). As previously noted, however, a collective action

5

differs from a Rule 23 class action, as each employee in a collective action must provide consent in writing to join the action. *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). Accordingly, the primary focus of a court's inquiry when reviewing a settlement of claims under the FLSA is to ensure that the settlement reflects a fair resolution of the claims and not, as Rule 23 requires, that the due process interests of absent class members be protected. *See Collins*, 568 F. Supp. 2d at 721-22.

Thus, approval of this FLSA collective action settlement does not require the two-step process of preliminary approval and notice to the class, nor the opportunity to object that is ordinarily required under Rule 23[6]. *See Moore*, 2009 WL 2848858 at *2 (unlike Rule 23 action, § 216(b) "does not expressly require a 'fairness' hearing on a proposed settlement"); *Collins*, 568 F. Supp. 2d at 721-22l; 5 Moore's Federal Practice 23.04(1). Because members of an FLSA collective action must consent to join the suit and agree to be bound by any settlement reached  by the named plaintiffs and their counsel, preliminary notice of the settlement and an opportunity to object are not required. *Moore*, 2009 WL 2848858 at *1. Workers who have not joined this FLSA case are not bound by the § 216(b) settlement[7]. *Id.*; see 29 U.S.C. § 216(b).

**A.    The Agreement Is Fair And Reasonable.**

Courts reviewing a proposed FLSA collective action settlement must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all

---

[6] The preliminary approval, notice to the class, and opportunity to object provisions are present in the Agreement, but they are for the Rule 23 settlement portion of the Agreement.

[7] Because the Agreement also seeks to settle the Kentucky claims pursuant to Rule 23, the same universe of employees who received the section 216(b) notice in this case, if they worked full time during the relevant time period, become members of the putative Rule 23 class for settlement purposes. If the Court preliminarily approves the Rule 23 settlement, such employees, excluding the Opt-In Plaintiffs, will receive notice of the Rule 23 settlement that includes a compromise of their Kentucky Wages and Hours Act and FLSA claims in exchange for the right to claim a payment.

parties concerned. See, e.g., *Lynn's Food Stores*, 679 F.2d at 1354; *Collins*, 568 F. Supp. 2d at

718-19; *Rampersad v. Certified Installation LLC,* No. 1:12-cv-00032, 2012 WL 5906878, at *1

(E.D. Tenn. Nov. 26, 2012).  The Sixth Circuit has identified seven factors that should aid courts

in their determination of whether a class action settlement is fair and reasonable:

1)  The risk of fraud or collusion;

2)  The complexity, expense, and likely duration of litigation;

3)  The amount of discovery engaged in by the parties;

4)  The likelihood of success on the merits;

5)  The opinions of class counsel and class representatives;

6)  The reaction of absent class members; and

7)  The public interest.

*Crawford,* 2008 WL 4724499 at *3 (*citing Int'l Union, United Auto., Aerospace, and Agr.*

*Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*,

720 F.2d 909, 922-23 (6th Cir. 1983))).

"The Court may choose to consider only those factors that are relevant to the settlement

at hand and may weigh particular factors according to the demands of the case." *Redington v.*

*Goodyear Tire & Rubber Co.*, Case No., 5:07-cv-1999, 2008 WL 3981461, *11 (N.D. Ohio August

22, 2008) (citing *Granada*, 962 F.2d at 1205-06). Because this case is in part a § 216(b) collective

action rather than a Rule 23 class action, one of these factors is inapplicable, as discussed in more

detail below for the purpose of the present motion.

**1.    The Absence of Fraud or Collusion in the Settlement Favors Approval.**

An initial presumption exists that a settlement is fair where counsel for the parties

negotiate the settlement at arm's length. *Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996). The settlement of this litigation was achieved through arm's length negotiations facilitated through a formal, full day mediation conducted by Michael Russell, a private mediator with extensive experience in FLSA litigation. *See* Garrison Declaration, **Exhibit 2**, at ¶ 11. However, a settlement was not reached during this mediation. *Id.* The parties' continued their negotiations, facilitated by Mr. Russell, and eventually reached the proposed Agreement several weeks after their formal mediation. *Id.*

## 2. The Complexity, Expense, and Likely Duration of this Case, Were it not to Settle, Favors Settlement.

The complexity, expense, and likely extended duration of this case (were it not to settle at this time) are significant factors that all favor settlement. Should this case not settle at this relatively early stage of litigation, it should be expected that Plaintiffs' claims will be vigorously litigated through dispositive motions, Plaintiff's motion for Rule 23 certification, Intrepid's motion for decertification, and trial.

If the parties are not able to resolve the claims at issue, this litigation would likely continue for several years. Not only would the parties litigate their claims through summary judgment and/or trial, but the case likely would be appealed by one party (or both).

Undoubtedly, both parties will incur substantial additional legal fees and expenses if this case is not settled. For example, if this case is not resolved and instead litigated through dispositive motions or trial, Plaintiffs' counsel estimates that they would incur between $200,000 and $300,000 in attorneys' fees and they would likely incur in excess of $100,000 in expenses. *See* Garrison Declaration, **Exhibit 2**, at ¶ 22.

Given the complexities of the claims at issue and the expense and extended duration of

continued litigation, settlement is in the interest of both the Original Class Members and Intrepid and in the interest of judicial economy.

### 3. The Extent of Discovery Taken By the Parties Favors Approval of the Settlement.

The parties engaged in thorough discovery in this case concerning Intrepid's pay practices with respect to its non-exempt home health worker who are paid based on a fee per visit. Plaintiffs conducted a Rule 30(b)(6) deposition focused on numerous different topics including:

- Intrepid's policies and practices for how non-exempt home health workers in Kentucky, including Certified Occupational Therapy Assistants, Home Health Aids, Licensed Practical Nurses and Physical Therapy Assistants, have been paid from November 22, 2012 to the present

- Any differences between Intrepid's Kentucky offices with respect to how Intrepid's non-exempt home health workers in Kentucky, including Certified Occupational Therapy Assistants, Home Health Aids, Licensed Practical Nurses and Physical Therapy Assistants, have been paid from November 22, 2012 to the present.

- Intrepid's payroll system(s) used to determine compensation of its non-exempt home health workers in Kentucky, including Certified Occupational Therapy Assistants, Home Health Aids, Licensed Practical Nurses and Physical Therapy Assistants, from November 22, 2012 to the present. This topic seeks testimony describing how time is (and has been) tracked for these employees as well as how compensation for various home health visit types is and/or was determined for these employees.

See Garrison Declaration, **Exhibit 2**, at ¶ 10. In addition, Plaintiffs took significant written discovery and reviewed and analyzed hundreds of pages of documents related to their claims. *Id*.

### 4. The Uncertainty of this Litigation Favors Settlement.

In this case, as in any class or collective settlement, the most important factors in determining reasonableness is the scope of the relief, as measured against the risk of continuing to litigate. *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y 1969) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."). In this case, plaintiffs who opted into the collective action will receive a total of $23,000 (before

taxes) if this settlement is approved and the Rule 23 class members will receive $174,500 (before taxes, settlement administration costs and the reduction of $7,000 for the Named Plaintiff's service payment). Those amounts represents a  reasonable recovery for the plaintiffs based on comprehensive discovery and Class Counsel's analysis of how much time each opt-in claims to have plaintiff worked, including travel time and alleged unrecorded patient charting time. (*See* Garrison Declaration, **Exhibit 2**, at ¶ 12). If Plaintiff continued to litigate these collective FLSA claims through to trial, there is no guarantee that the opt-in plaintiffs would receive any more money than they will be receiving through this settlement, and there is some risk that they would receive less or none at all.  *Id.*

Moreover, while Named Plaintiff is reasonably confident that she would be able to establish Intrepid' s liability for this alleged unpaid time through either a motion for summary judgment or at trial, Defendants have expressed that they are likewise confident that the Named Plaintiff would not be able to establish liability or prove damages, and Plaintiff and Class Counsel are also aware that continuing to litigate is never without risk. *See, e.g. Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA). Considering this inherent risk in continuing to litigate, coupled with the uncertainty of recovering any more money secured for Plaintiffs in the proposed settlement, a settlement at this juncture is clearly in the best interests of all opt-in plaintiffs, in order to provide for an immediate and guaranteed recovery.

### 5.   The Opinions of Class Counsel and Class Representatives Favor Settlement.[8]

---

[8] The representations set forth in this subpart 5 are the representations of Plaintiffs' counsel. The Defendant, however, does not object to the representations in this subpart.

The lawyers of Barrett Johnston Martin & Garrison LLC have litigated numerous collective of all types and have recovered millions of dollars in these cases on behalf of workers, shareholders, and consumers. *See* Garrison Declaration, **Exhibit 2,** at ¶ 7. After mediation and weeks of subsequent negotiations, an arm's-length settlement was reached that, in the view of Plaintiffs' counsel and Named Plaintiff, affords the existing Original Class Members and the future opt-out class with significant and meaningful financial benefits. *See* Garrison Declaration, **Exhibit 2**, at 12.

Throughout the settlement process, Plaintiffs' counsel conferred with the Named Plaintiff, who was present in the room for all of the proceedings during mediation, answering her questions and soliciting her opinion on how to tailor the settlement. *Id.* The Named Plaintiff has conveyed her satisfaction with the results obtained. *Id.* All in all, both Plaintiffs' counsel and the Named Plaintiff believe this to be a fair and reasonable outcome. *Id.*

### 6. The Reaction of Absent Class Members is Irrelevant in this Matter.

As discussed above, this case is in part a collective action brought pursuant to § 216(b) of the FLSA. Unlike a Rule 23 class action, there are not absent class members. All of the Plaintiffs in this matter have joined this case pursuant to § 216(b) by filing a consent form and have agreed to be bound by the settlement reached by the Named Plaintiff and her counsel.

### 7. Approval of this Settlement is in the Public's Interest.

"If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'" *Crawford*, 2008 WL 4724499 at *9 (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1353). In disputes over employees' FLSA rights,

11

"[s]ettlement is the preferred means of resolving litigation." Id. (*citing Collins*, 568 F. Supp. 2d at 720 *(citing Williams v. Nat'l Bank*, 216 U.S. 582 (1910))).

The proposed settlement of this action is clearly in the public's interest. As a general principle, it is in the public's interest for employees' wage disputes to be resolved. Should the proposed settlement be approved, this Court will ensure that the Original Class Members (who all work or worked for Intrepid as home health workers in Kentucky) will receive the benefit of a Court-approved FLSA settlement while Intrepid can continue its operations without the costs and inconvenience of litigation. It is in the benefit of all employees for a federal court to supervise the settlement of a wage dispute in these circumstances.

### B.  Plaintiffs' Proposed Attorneys' Fees and Expenses are Reasonable.[9]

As part of its fairness determination, the Court must also determine that the proposed attorneys' fees are reasonable. *See Strong v. Bellsouth Telecomms.*, 137 F.3d 844, 849-50 (5th Cir. 1998); *see also Zoll v. Eastern Allamakee Cmty School Dist.*, 588 F.2d 246, 252 (8th Cir. 1978). The party seeking attorneys' fees has the burden to prove that its request for fees is reasonable by "submit[ting] evidence supporting the hours worked and rates claimed." *Consumers Produce, Inc. v. R. Family Market*, Case No. 4:08-cv-70, 2009 WL 2351642, *2 (N.D. Ohio July 28, 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

The FLSA has a fee-shifting provision that provides that the prevailing party shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b). Indeed, "[a]n award of attorneys' fees under the FLSA is **mandatory**, with the amount of fees within the discretion of the

---

[9]     The arguments and representations set forth in this subpart are those of the Plaintiffs or Plaintiffs' counsel. The Defendant does not join in the specific statements in this subpart but does not object to the contention that the total amount of Plaintiffs' attorneys' fees and expenses are reasonable.

court." *Cruz v. Vel-A-Da, Inc.* Case No. 3:90CV7087, 1993 WL 659253, *3 (N.D. Ohio May 14, 1993) (*citing United Slate, Tile & Composition v. G & M Roofing*, 732 F.2d 495, 501 (6th Cir.1984)).

The federal courts have long recognized the profound importance of plaintiffs' right to recover attorneys' fees under the FLSA. *See, e.g., Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) (FLSA's fee recovery provision, 29 U.S.C. § 216(b), is not collateral to the merits of an FLSA lawsuit but, rather, is an "integral part of the merits of FLSA cases and part of the relief sought therein."). Where parties retain experienced and specialized out-of-town counsel, courts "are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983). "In such a situation, the court would be justified in looking to his or her standard rate in the community where that attorney normally practices as a reflection of that attorney's training, background, expertise and skill." *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983).

Consistent with these principles, it is commonplace for FLSA attorneys' fee awards to exceed the amount of the plaintiffs' recovered unpaid wages. There is **no** numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. Congress has determined that it is important for FLSA rights to be enforced, and that reasonable attorneys' fees must be awarded to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant. *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134-43 (6th Cir. 1994) (FLSA fee award "encourages the vindication of congressionally identified policies and rights"). Thus, it is not uncommon for

fee awards to exceed the amount recovered by plaintiffs in lost wages. *See City of Riverside v. Rivera*, 477 U.S. 561, 574, 578 (1986) (no rule of proportionality in cases awarding fees under § 1988, in order to ensure lawyers are available to represent persons with legitimate claims). This principal has been applied in many cases in the FLSA context. *See, e.g., Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Doc. 819 (N.D. Ala. Feb. 17, 2009) (an FLSA case in which three individual wage and hour claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based the attorney's lodestar hourly rates); *see also Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228-29 (7th Cir. 1972); *Perdomo v. Sears, Rosebuck & Co.*, Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *10 (M.D. Fla. Dec. 3, 1999); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp.2d 1313, 1327 (M.D. Fla. 2001); *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); *Perrin v. John B. Webb & Assocs., Case* No. 604CV399ORLKRS, 2005 WL 2465022, *4 (M.D. Fla. Oct. 6, 2005) ("In order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time.").

The relief provided to Original Class Members through the Settlement Agreement goes beyond ordinary back pay. Intrepid has agreed to a two-step mechanism to facilitate payment of wages to (1) workers who have joined this litigation pursuant to 216(b); and (2) workers who join this litigation through a Rule 23 action to be supervised by this Court.[10] The Agreement provides $23,000.00 in total wages and additional awards to those who joined this litigation pursuant to Section 216(b). Moreover, through the Rule 23 procedure that will allow current and former employees who have not yet joined this litigation to submit their claim for wages in this action,

---

[10] The Rule 23 class action claims are brought under the KWHA that has an attorneys' fee provision which mirrors the FLSA's fee provision.

Intrepid has agreed to make wage payments and additional awards, with the aggregate amount of the Rule 23 settlement totaling $174,500.00.

In light of the significant recovery of alleged unpaid overtime for the Settlement Class Members, the amount of Plaintiffs' attorneys' fees and expenses Intrepid has agreed to pay, should this settlement be approved, are fair and reasonable. *See also Zoll*, 88 F.2d at 252 ("[T]he minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate.").

As previously set forth, after reimbursement of expenses, Intrepid has agreed to pay $142,500.00 for Plaintiffs' attorneys' fees and expenses, which are comprised of $129,017.19 in attorneys' fees and $13,482.81 in expenses. *See* Garrison Declaration, **Exhibit 2**, at ¶¶ 15, 17.

The total amount of attorneys' fees and expenses actually incurred by Plaintiffs' counsel, as of the date of this filing,  is approximately $159,940.31 ($146,457.50 in fees and $13,482.81 in expenses). *Id*. Class Counsel estimates that they will incur at least $20,000 in attorneys' fees and expenses through the administration of this proposed settlement. *See* Garrison Declaration, **Exhibit 2**, at ¶ 21. Accordingly, the total attorneys' fee agreement represents a reduction of approximately $37,500 of the actual lodestar fees and expenses generated in litigating Plaintiffs' claims. Put differently, the recovery of Plaintiffs' attorneys' fees and expenses represents a 20% reduction of the fees and expenses actually and expected to be incurred in this litigation through the close of this case.

The hourly rates charged by Plaintiffs' counsel and the amount of hours worked are reasonable based on the prevailing market rates, and based on the successful litigation of similar cases. *See* Garrison Declaration, **Exhibit 2**, at ¶ 16. Indeed, the hourly rate structure used by Barrett Johnston Martin & Garrison, LLC has been approved by Sixth Circuit district courts in this

very type of litigation involving home health workers who brought collective claims to seek overtime pay under the FLSA, even against the same employer, Intrepid. *See* Order Approving Settlement, *Paine v. Intrepid*, No. 3:14-cv- 2005 (M.D. Tenn. Jan. 6, 2017) (Crenshaw, J.) ("*Paine* Order") (considering rates set forth in the Declaration of Jerry E. Martin) (attached hereto as **Exhibit 3**); Declaration of Jerry E. Martin, *Paine v. Intrepid*, No. 3:14-cv-2005 (M.D. Tenn. Jan. 6, 2017) (setting forth hourly rates for all BJMG billing professionals involved in this matter) (attached hereto as **Exhibit 4**); Order Approving Settlement, *Flatt v. LHC Group, Inc., et al.*, No. 2:16-cv-14 (M.D. Tenn. Mar. 1, 2017) (specifically listing the hourly rates charged by BJMG billing professionals pursuant to the rate structure used in this case) ("*Flatt* Order") (attached hereto as **Exhibit 5**).[11]

In these cases, the Judges specifically found that these hourly rates were reasonable for BJMG's attorneys and staff. *See Paine* Order, **Exhibit 3** ("The Court finds the requested attorneys' fees and litigation expenses to be fair, reasonable, and based upon reasonable hours worked and reasonable rates charged by Plaintiff's Counsel."); *see also* **Exhibits 4 and 5**. It should be noted that these cases were resolved in 2017, but that Class Counsel are not seeking an increase of their rates charged nearly two years ago.

Finally, the complexity of the procedural and factual issues of these cases, the inability of Plaintiffs' counsel to handle other matters due to the total hours consumed by these cases, and the degree of success in terms of the settlement, justify the requested fee award. *See* Garrison Declaration, **Exhibit 2**, at ¶ 20.

---

[11]     Although the Court in *Flatt* did not consider David Garrison's specific hourly rate, since he did not work on that matter, the Court considered the rates of BJMG's other billing professionals in this matter. Specifically, the Court approved the rates for Joshua  Frank and members of the firm's professional staff whose rates were charged pursuant to the identical rate structure BJMG has charged in this matter.

### III.  CONCLUSION

Because the proposed Settlement is fair, adequate and reasonable, the Court should

**GRANT** the Parties' Joint Motion for Approval of Section 216(b) Settlement.

Date: February 15, 2019                    Respectfully submitted,

                                           /s/ David W. Garrison
                                           **DAVID W. GARRISON (No. 24968)***
                                           **JOSHUA A. FRANK (No. 33294)***
                                           BARRETT JOHNSTON
                                           MARTIN & GARRISON LLC
                                           414 Union Street, Suite 900
                                           Nashville, TN 37219
                                           Telephone: (615) 244-2202
                                           Facsimile: (615) 252-3798
                                           dgarrison@barrettjohnston.com
                                           jfrank@barrettjohnston.com


                                           *Attorneys for Plaintiff*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2019 a true and exact copy of the foregoing *Memorandum in Support of Joint Motion for Approval of Section 216(b) Settlement* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

> */s/* David W. Garrison
> DAVID W. GARRISON
> **BARRETT JOHNSTON**
> **MARTIN & GARRISON, LLC**

37445649.1