**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **TINA MITCHAM On Behalf of HERSELF and All Others Similarly Situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **COLLECTIVE AND CLASS ACTION** |
| **v.** | ) ) | **CASE NO. 3:17-cv-00703** |
| **INTREPID U.S.A., INC., AND F.C. OF KENTUCKY, INC., d/b/a INTREPID USA HEALTHCARE SERVICES,** | ) ) ) ) | **JUDGE BOOM** **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) | |

---

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ORDER PRELIMINARILY APPROVING RULE 23 CLASS ACTION SETTLEMENT**

---

## I.      INTRODUCTION

After mediation and notwithstanding their adversarial positions in this matter, Named Plaintiff, Tina Mitcham and Defendants Intrepid U.S.A., Inc. and F.C. of Kentucky, Inc. ("Intrepid") (collectively, the "Parties") have, with a mediator's assistance, negotiated a settlement of this litigation. The terms of the proposed settlement are set forth in the Settlement Agreement (the "Agreement"), which is attached as **Exhibit 1**.[1]

That motion and this supporting memorandum concern the Agreement as it applies to the proposed Rule 23 Class (the "Rule 23 Settlement"). The Parties have moved by separate motion for approval of the Agreement with regard to individuals who joined this litigation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") (the "Section 216(b) Settlement").

---

[1]        Various terms are defined in the Agreement. These defined terms are at times used in this memorandum. The Parties refer the Court to the Agreement for the definition of defined terms.

The Parties have stipulated—for purposes of this settlement *only*—that the proposed Rule 23 Class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).

The Named Plaintiff's claims with regards to the Rule 23 Class arise under the Kentucky Wages and Hours Act (the "Kentucky Wage Act").[2]  The Named Plaintiff claims that Intrepid failed to properly pay the Rule 23 Class for all time spent working as defined by the Kentucky Wage Act, including overtime. She seeks compensation from Intrepid for overtime pay for time spent by the class performing various work-related activities that she contends were not recorded in Intrepid's timekeeping system, including travel time and time spent charting for patients. Additionally, she seeks liquidated damages, litigation costs, expenses, reasonable attorneys' fees, and further relief as this Court deems just and proper.   Defendants deny these allegations and deny any liability for these claims.  But to avoid the further costs, burdens and risks of litigation, the parties have agreed to settle those claims.

As discussed in more detail below, the Rule 23 Settlement is the product of arms-length negotiations between the Parties and was reached with the assistance of an experienced private mediator. The Rule 23 Settlement is a fair, reasonable, and adequate resolution of the claims in this matter. The proposed Notice Materials (as defined below) provide the putative class members with the best notice practical under the circumstances and allow for a full and fair opportunity to consider the Rule 23 Settlement and to develop a response.

As such, this Court should certify the Rule 23 Class for settlement purposes only and set a fairness hearing to consider final approval. Additionally, this Court should approve the form and proposed manner of distribution of the Notice Materials.

---

[2]     The Section 216(b) Settlement involves similar claims under the FLSA. The Agreement provides that the individuals involved in the Section 216(b) Settlement and the Rule 23 Class will release both federal and state law claims as defined in the Agreement.

## II.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Rule 23 Class

Intrepid has agreed, for settlement purposes only, not to oppose certification of the following settlement class:

> All former and current non-exempt home health workers employed by Defendants in the position of Licensed Practical Nurse, Physical Therapy Assistant, Certified Occupational Therapy Assistant, or Home Health Aide at any of Defendants' Kentucky locations from November 22, 2012 to November 13, 2018 to provide in home health care services to patients, who performed 20 or more visits during any week within this time period and who were paid on a fee per visit basis, but excluding any individuals who entered into the settlement in the case, Paine et al. v. Intrepid U.S.A., Inc., No. 3:14-cv-02005 (M.D. Tenn. 2017) ("Class Members") and excluding any individual who joined this Action by filing a consent form pursuant to 216(b) of the Fair Labor Standards Act ("FLSA").

### B.   Class Counsel[3]

The Named Plaintiff and the other individuals who joined this litigation pursuant to 29 U.S.C. §216(b) (collectively the "Original Class Members") are represented by the following counsel:

| | | |
|---|---|---|
| David W. Garrison | J. Chris Sanders | Peter D. Winebrake |
| Joshua A. Frank | Chris Sanders Law PLLC | Winebrake & Santillo, LLC |
| Barrett Johnston Martin & Garrison, LLC | 517 West Ormsby Avenue | 715 Twining Road, Suite 211 |
| 414 Union Street, Suite 900 | Louisville, KY 40203 | Dresher, PA 19025 |
| Nashville, TN 37219 | Telephone: (502) 814-0094 | Phone: (215) 884-2491 |
| Telephone: (615) 244-2202 | | |

These lawyers have extensive experience in prosecuting and litigating wage-and-hour actions such as this one. Further, these law firms have the resources to effectively prosecute large-scale wage actions. Indeed, these lawyers have conducted extensive investigation of this case, reviewing hundreds of pages of documents produced by Intrepid, conducting a deposition of a

---

[3]     As noted herein, Named Plaintiffs moves this Court to appoint Barrett Johnston Martin & Garrison, LLC as Class Counsel to represent the Rule 23 class.

corporate representative concerning Intrepid's policies, payroll practices, production jobs, and operations, and reviewing data related to potential class members.[4]

### C.   Monetary Relief

The Agreement is the result of extensive and vigorously contested negotiations on the part of Counsel and Defense Counsel, all of whom have substantial experience in litigating class actions involving similar claims.

### 1.   Rule 23 Class Members

Per the proposed Agreement, each Rule 23 Class Member is eligible to receive a specified share of the Rule 23 Settlement Fund of $174,500.00.

Rule 23 Class Members who timely submit a Settlement Claim Postcard will be paid a *pro rata* share of the Net Rule 23 Class Members Settlement Fund, as defined in the Settlement Agreement, based on gross earnings and number of workweeks worked by the Rule 23 Class Members during the statutory period.  Specifically, the settlement amount for each Rule 23 Class Member is determined by taking each Rule 23 Class Members *pro rata* share of the total gross earnings for the Rule 23 Class during the statutory period as well as the *pro rata share* of each Rule 23 Class Member's total weeks worked during the statutory period.  Then, fifty percent (50%) of the Net Rule 23 Class Members Settlement Fund is divided among Rule 23 Class Members based on their *pro rata* share based on gross earnings.  The other fifty percent (50%) of the Net Rule 23 Class Members Settlement Fund is divided among Rule 23 Class Members based on their *pro rata* share based on weeks worked.  An example of this allocation (without considering taxes and settlement administration costs), assuming that no members of Rule 23 Class opt-out of this Settlement, is attached to the Settlement Agreement as Exhibit I.

---

[4]      The representations set forth in this paragraph are those of Class Counsel. Intrepid does not object to the representations.

The average amount each Rule 23 class member will be eligible to claim and receive is $1,250.00.  Class Counsel submits that the formula used to allocated funds to Rule 23 Class Members will result in a fair recover for the alleged wage and hour violations of Kentucky Law. Class Counsel makes this representation based on their analysis of thousands of time and pay records.

### 2.      Original Class Members

Intrepid has agreed to pay the aggregate gross amount of $23,000.00 to the Original Class Members. Each Original Class Member's payment is based on a determination of overtime compensation calculated by including alleged unrecorded compensable travel time and other alleged unrecorded work time, including time spent charting for patients outside of their in-home visits.  Class Counsel surveyed time estimates form the Opt-In Plaintiffs, and submit that the Opt-In Plaintiffs' payments are sufficient to account for this alleged unrecorded work time.

### 3.      Service Payment to Named Plaintiff / Class Representative.

Per the terms of the Agreement and subject to this Court's approval, the Named Plaintiff/Class Representative will receive the additional amount of $7,000 as an incentive award out of the Rule 23 Settlement Fund.  This amount is separate and apart from Named Plaintiff's recovery as an Original Class Member, which will be based on the claimed travel time and alleged unrecorded charting time analyzed and calculated by Class Counsel.

In addition to being an Original Class Member who asserted her FLSA claims under 216(b), the Named Plaintiff is also the Class Representative for purposes of the Rule 23 Settlement. The service payment is intended to recognize the time and effort that the Named Plaintiff expended on behalf of the Opt-In Plaintiffs and the Rule 23 Class Members, as well as the risks she incurred during the course of this litigation.

In the employment context, the Sixth Circuit has specifically recognized the importance of rewarding employees who protest unlawful employment practices and seek to secure rights for other victimized employees. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protest and help to bring rights to a group of employees who have been the victims of [unlawful employment practices]"). Thus, service payments are common and are intended to compensate the originating plaintiff and participating plaintiffs for their willingness to serve the collective action, for the services they rendered, for the risks they bore, and for the opportunities they sacrificed to ensure a favorable result. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) ("Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa.2000)).

The proposed $7,000.00 service payment to Named Plaintiff Mitcham is well within the range of what has been approved by Sixth Circuit district courts. *See, e.g., Abadeer v. Tyson Foods, Inc.*, Case No. 3:09-cv-00125, slip. op. at 1 (M.D. Tenn. Oct. 17, 2014) (Sharp, J.) (approving service awards of up to $11,500.00) (citing to Exhibit 2 of Settlement Agreement, DE 411.1 at 57); *Johnson v. Midwest Logistics Sys.*, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) approving a $12,500 service award to the named plaintiff); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) (finding incentive payments "justified" and not to present risk of collusion); *Carroll v. Guardian Home Care Holdings, Inc.,* Case No. 3:14-cv-01722, slip. op. at 4 (M.D. Tenn. Aug. 31, 2015) (Haynes, J.) (approving a $10,000.00 service payment for named plaintiff).

6

Here, the Named Plaintiff helped organize this case, provided critical information to Plaintiffs' counsel to negotiate an agreement on conditional certification, and represented both classes during the negotiation of the settlement of this case. *See* Garrison Declaration, Exhibit 2 to Memorandum in Support of Joint Motion for Approval of Section 216(b) Settlement at ¶ 12. According to Class Counsel, without the leadership of the Named Plaintiff, the proposed settlement would never have come to fruition. *Id*. As noted above, the amount of the incentive pay agreed to by the parties is reasonable and in line with amounts that have been approved by courts in similar litigation.

### 4. Attorneys' Fees and Costs

The Agreement provides for payment to Class Counsel for attorneys' fees and costs in the amount of $142,500.00.[5]

### 5. *Cy Pres* Award

If at least forty percent (40%) (or $69,800.00) of the Rule 23 Settlement Fund is not paid and negotiated by the Rule 23 Class Members (after considering the service award to the Named Plaintiff, settlement administration costs and required tax payments associated with the settlement payments), then the difference between $69,800.00 and the amount paid and negotiated will be paid to Kentucky Equal Justice Center (the "Charity") as a *cy pres* award.

## III. THE RULE 23 CLASS MEETS THE STANDARDS FOR PRELIMINARY CERTIFICATION FOR SETTLEMENT PURPOSES

When confronted with a request for certification of a settlement class, a court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2)

---

[5]     The Memorandum in Support of Joint Motion for Order Approving Section 216(b) Settlement  filed with this Court sets forth the reasonableness of the proposed fees and costs.

commonality, (3) typicality, and (4) adequacy of representation." *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "In addition . . . the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Id.* at 1022.

In the instant case, Plaintiff proposes that the Court certify the Rule 23 Class pursuant to Rule 23(b)(3), which is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Id.* (quoting 7A Wright, Miller & Kane, Fed. Practice & Proc. § 1777 (2d ed. 1986)). "To qualify for certification under this subsection, a class must satisfy two [additional] conditions." *Id.* "[C]ommon questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

Under these standards, this Court should certify the Rule 23 Settlement Class that the Parties have proposed.

### A.    Rule 23(a) Requirements

Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are discussed in detail below.

1.    **Rule 23(a)(1): Numerosity.**

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." Here, "'[i]mpractical' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class to meet the numerosity requirement." *See Union P. R. Co. v Woodahl,* 308 F Supp 1002 (D. Mon. 1970).

In this case, the proposed Rule 23 Class contains 134 persons[6], all of whom are readily identifiable from Intrepid's payroll records. Plaintiff contends, and Intrepid does not dispute for the purposes of settlement, that it would be very difficult from an administrative perspective to join all such plaintiffs through non-class action mechanisms. Therefore, Plaintiff submits, and Intrepid does not dispute for the purpose of settlement, that numerosity as required by Rule 23(a)(1) is satisfied for the proposed Rule 23 Class.

2.    **Rule 23(a)(2): Commonality**

Rule 23(a) also requires the existence of "questions of law or fact common to the class." Plaintiff contends, and Intrepid does not dispute for purposes of settlement only, that several common questions of fact and law exist, including:

- Whether the unpaid activities at issue constituted work activities under Kentucky law;

- Whether Plaintiffs and the class are entitled to overtime compensation as a result of Intrepid's alleged failure to include unrecorded time in its overtime pay determination;

- Whether Intrepid acted in good faith with respect to its implementation and use of the challenged pay practices at issue; and

- Whether Intrepid acted willfully in violating Kentucky wage and hour law.

---

[6]    There will be 134 Rule 23 Class Members, provided that no such class members opt-out of the proposed settlement.

Plaintiff submits, and Intrepid does not dispute for the purposes of settlement only, that these issues satisfy the commonality requirements of Fed. R. Civ. P. 23(a)(2).

### 3.      Rule 23(a)(3): Typicality

Rule 23 also requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if his claims are based on the same legal theory. *See Elkins v Am. Showa, Inc.*, 219 F.R.D. 414 (S.D. Ohio 2002). In the present litigation, Plaintiff contends that her claims arise out of the same type of factual and legal circumstances surrounding the claims of each Rule 23 Class Member. Specifically, Plaintiff contends that she and those she seeks to represent all were subject to the same pay practices that resulted in them not being paid the proper amount of overtime, including because Plaintiff contends  travel time and time spent charting for patients at home was not recorded in Intrepid's timekeeping system.  While Intrepid denies the underlying allegations and denies Plaintiff's claims, it does not dispute for purposes of settlement, that typicality is met.

### 4.      Rule 23(a)(4): Adequacy of Representation

Rule 23(a)'s final requirement is that the representative parties fairly and adequately protect the interests of the class. This requirement is grounded in "due process concerns," as class members are constitutionally entitled to "adequate representation before an entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). The adequacy requirement is met where the representatives: (1) have common, and not antagonistic, interests with unnamed members of the class, and (2) will vigorously prosecute the interests of the class through qualified counsel. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); see also *Hanlon*, 150 F.3d 1020.

Here, as noted and detailed above, Plaintiff contends that she possesses the same type of interests and suffered the same type of injury as the other proposed Rule 23 Class Members. As to the second "adequacy" requirement, Plaintiff has prosecuted this matter diligently through her counsel. Indeed, Plaintiffs' counsel have extensive experience in class action litigation including class overtime and are well-qualified to be appointed as class counsel. For purposes of the proposed Rule 23 class settlement, Named Plaintiff requests that this Court appoint Barrett Johnston Martin & Garrison, LLC, specifically David W. Garrison and Joshua A. Frank, as Class Counsel. BJMG, and specifically Mr. Garrison and Mr. Frank, are well-qualified based on their significant experience representing workers in class and collective action litigation. *See* Garrison Declaration, Exhibit 2 to Memorandum in Support of Joint Motion for Approval of Section 216(b) Settlement at ¶¶ 3, 5, 6, 7, 8 (see BJMG's Firm Resume, Attachment 1 to Garrison Declaration).

Therefore, Plaintiff contends, and Intrepid does not dispute for purposes of settlement, that the adequacy requirement of Rule 23(a)(4) is satisfied for purposes of certification of settlement classes, Named Plaintiff Mitcham should be appointed as Class Representative, and Plaintiff's counsel should be appointed as Class Counsel.

## B.     Rule 23(b)(3) Requirements

Having met the four prerequisites for class certification found in Rule 23(a), Plaintiff submits that the next consideration is whether the proposed Rule 23 Class satisfies Rule 23(b)(3). Plaintiff submits, and Intrepid does not dispute for the purposes of settlement, that the Rule 23 Class satisfy the requirements of that subsection.

To qualify for certification under Rule 23(b)(3), a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: (1) common questions must "predominate over any questions affecting only individual members;" and (2) class resolution must be "superior to other

available methods for the fair and efficient resolution of the controversy."[7] *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

In analyzing whether these conditions are satisfied, pertinent considerations include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). In light of such considerations, Plaintiff contends as more fully set forth below, and Intrepid does not dispute for purposes of settlement, that both Rule 23(b)(3)'s predominance and superiority requirements are satisfied in this case for purposes of certifying settlement classes.

### 1.    Common Questions Predominate

"The Rule 23(a)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. It focuses on the "relationship between the common and individual issues." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Wright, Miller & Kane, Fed. Prac. & Proc. § 1778 (2d ed. 1986)).

In this case, Intrepid's alleged liability centers around its alleged failure to pay Rule 23 Class Members the proper amount of overtime as a result of unrecorded time spent traveling from patient visit to patient visit and for time spent charting for patients. As detailed above in Section

---

[7]    Because this Motion is made in connection with a proposed class settlement, it is unnecessary to address or decide the other consideration contained in Rule 23(b)(3)—"manageability" of a trial—since there will be no trial if this settlement is approved. *See Amchem*, 521 U.S. at 620.

II.A.2, Plaintiff contends that the resolution of the Rule 23 Class's claims involves a number of

common issues. Moreover, Plaintiff contends that the common issues will predominate because

Plaintiff and the Rule 23 Class Members hold or held the same or similar positions and are or were

paid pursuant to a common policy. As a result, Plaintiff contends, and Intrepid does not dispute

for purposes of settlement, that the common factual and legal issues raised by the central

allegations will predominate. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89

(S.D.N.Y. 2001).

### 2.      Class Action is Superior

Rule 23(a)(3)'s final requirement is that "resolution of the issues on a class wide basis

[be] superior to other methods available for the fair and efficient adjudication of the controversy."

Plaintiff contends that this requirement is satisfied because no indication exists that class members

seek to individually control their cases, that individual litigation is already pending in other forums,

or that this particular forum is undesirable for any reason. Further, Rule 23 Class Members may

lack the resources to secure experienced and qualified representation or to see litigation through

to completion. In addition, individual lawsuits from more than a hundred individuals would be

wasteful and inefficient.

Accordingly, Plaintiff contends, and Intrepid does not dispute for purposes of settlement,

that certification of settlement classes is superior to any other method of resolving this matter, as

it will promote economy, expediency, and efficiency.

## IV.   THE PROPOSED RULE 23 SETTLEMENT SATISFIES PRELIMINARLY APPROVAL CRITERIA

A "class action shall not be dismissed or compromised without the approval of the court."

*See* Fed. R. Civ. P. 23(e). Such approval "involves a two-step process in which the Court first

determines whether a proposed class action settlement deserves preliminary approval and then,

after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage, the court need only "determine whether the proposed settlement is within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (internal citations and quotations omitted). In other words, because the Court cannot fully assess a settlement prior to providing class members notice of the settlement and the opportunity to present objections, the Court's first-stage analysis consists of a review for "obvious deficiencies." *In re Prudential Securities Inc. Ltd. Partnerships*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

To grant preliminary approval of the Rule 23 Settlement, the Court must find only that the settlement is non-collusive and within the range of possible final approval, also described as "the range of possible judicial approval.*" In re Vitamins Antitrust Litig.*, 2001 WL 856292, at *4-5 (D.D.C. July 25, 2001); *see also* Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions, § 11.41 (4th ed. 2006).

This is a minimal standard. As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval," the Court should preliminarily approve the settlement. *In re Vitamins*, 2001 WL 856292, at *4 (quoting *Manual for Complex Litigation, Third* (FJC 1995)). The Court may also direct the giving of notice to the class members of a final approval hearing, "at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd*., 214 F.R.D. 424, 426 (E.D. Tex. 2002) (quoting *Manual for Complex Litigation, Third,* at 237); 4 Newberg, § 11.25 (quoting same).

14

The process which generated the attached Agreement has been extensive, involving the exchange of documents, written discovery, a corporate 30(b)(6) deposition and extensive discussions regarding the legal issues involved in litigating and settling a case of this kind. The settlement of this litigation was achieved through a formal mediation conducted by Michael Russell, a private mediator with extensive experience in FLSA and class action litigation. Counsel for the Parties engaged in extensive discussion of the legal background of this case and the challenges facing both sides in: (1) obtaining or resisting certification; (2) obtaining or resisting final certification and decertification; and (3) proving or resisting liability and damages.

Leading up to the mediation, the Parties engaged in thorough discovery concerning Intrepid's pay practices with respect to its non-exempt home health workers. Plaintiff conducted a Rule 30(b)(6) deposition focused on numerous different topics including:

- Intrepid's policies and practices for how non-exempt home health workers in Kentucky, including Certified Occupational Therapy Assistants, Home Health Aids, Licensed Practical Nurses and Physical Therapy Assistants, have been paid from November 22, 2012 to the present

- Any differences between Intrepid' s Kentucky offices with respect to how Intrepid's non-exempt home health workers in Kentucky, including Certified Occupational Therapy Assistants, Home Health Aids, Licensed Practical Nurses and Physical Therapy Assistants, have been paid from November 22, 2012 to the present.

- Intrepid's payroll system(s) used to determine compensation of its non-exempt home health workers in Kentucky, including Certified Occupational Therapy Assistants, Home Health Aids, Licensed Practical Nurses and Physical Therapy Assistants, from November 22, 2012 to the present. This topic seeks testimony describing how time is (and has been) tracked for these employees as well as how compensation for various home health visit types is and/or was determined for these employees.

In addition, Plaintiff took significant written discovery and reviewed and analyzed hundreds of pages of documents related to her claims.

This discovery has allowed Class Counsel—who are experienced wage and hour class action attorneys—to assess the strengths and weaknesses of the claims against Intrepid and the benefits of the proposed Rule 23 Settlement under the circumstances of this case.

Finally, the compensation sought for Class Counsel is not excessive. Class Counsel will request a fees and expenses totaling $142,500.00. Importantly, these funds will be paid *in addition to and separate from* the Rule 23 Settlement Fund.

## V.     THE NOTICE MATERIALS MEET THE REQUIREMENTS OF RULE 23

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1)(B). The notice standard is satisfied here.

The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard*." Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). Moreover, notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

In this case, the form and the manner of the Notice and Opt-Out Statement (the "Notice Materials") have been negotiated and agreed upon by counsel. The Notice Materials will inform the Rule 23 Class of, among other things (1) appropriate information about the nature of this

litigation, the settlement class at issue, Class Counsel, and the essential terms of the Agreement and Rule 23 Settlement; (2) appropriate information about Class Counsel's request for attorneys' fees; (3) appropriate information about how to participate in the Rule 23 Settlement; (4) appropriate information about this Court's procedures for final approval of the Agreement and Rule 23 Settlement; (5) appropriate information about how to challenge or opt-out of the Rule 23 Settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation, the Agreement, and the Rule 23 Settlement. *See* Exhibits F and G of the Agreement (attached hereto as **Exhibit 1**).

The Parties propose that Defendants provide the Claims Administrator with a list, in electronic form, of the Rule 23 Class, including each individual's last known address, within three (3) business days after the entry date of an Order granting this Motion, and that within fourteen (14) days after Defendants produce such list with addresses, the Claims Administrator mail to the Rule 23 Class the Notice and Opt-Out Statements in the forms attached as Exhibits F and G to the Agreement (attached hereto as **Exhibit 1**). The mailing will be paid for out of the Rule 23 settlement fund, include a return envelope addressed to the Claims Administrator, and go to the last known address of each potential member of the Rule 23 Class. The potential members of the Rule 23 Class will have forty-five days after the date the Notice is mailed to consider the proposed Rule 23 Settlement and opt-out of the settlement or submit objections.

The Parties propose that, within fourteen days of the Effective Date, the Claims Administrator will mail a Settlement Claim Postcard, attached as Exhibit H to the Agreement (attached hereto as **Exhibit 1**), to Rule 23 Class Members. The Rule 23 Class Members will have forty-five days from the date the Claim Postcards are mailed to submit their Settlement Claim Postcard.

The notice plan provides the best notice practical and will provide the Rule 23 Class a full and fair opportunity to consider the terms of the Agreement and make a fully informed decision on whether to participate, to object, or to opt out of the Rule 23 Settlement.

## VI.   PAYMENT TO THE KENTUCKY EQUAL JUSTICE CENTER AS A CY PRES AWARD SHOULD BE APPROVED.

"*Cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, Case No. 06-3202, 2009 WL 2137224, *11 (E.D. Pa. July 16, 2009) (citing 4 NEWBERG § 11.20). "Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990), cited approvingly by *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 827 (6th Cir. 2006). The Court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members. *See Six Mexican Workers*, 904 F.2d at 1307. Indeed, appellate courts review a district court's conclusion that a settlement agreeing to a *cy pres* distribution is reasonable for abuse of discretion. See *In re Airline Ticket Comm'n Antitrust Litig.,* 307 F.3d 679, 682 (8th Cir. 2002); *Wilson v. Sw. Airlines*, 880 F.2d 807, 811 (5th Cir. 1989).

"Courts have generally looked favorably on distributions to charities that offer services that are related to the plaintiffs of a class action." *Lessard v. City of Allen Park*, 470 F. Supp. 2d 781, 783 (E.D. Mich. 2007) (*citing Rodriguez v. Berrybrook Farms, Inc.*, Case No. K86-161 CA8, 1990 WL 10520985, *3 (W.D. Mich. Oct. 29, 1990), citing *Six Mexican Workers*, 904 F.2d at 1309). Organizations "that provide legal services to low-income individuals" are common types of beneficiaries of *cy pres* awards. *Lessard*, 470 F. Supp. 2d at 783. In fact, *cy pres* distributions have

18

been utilized in collective action settlements under the FLSA, including distributions to law school public interest organizations. *See e.g., Carter v. Anderson Merchandisers, LP,* Case No. EDCV 08-00025-VAP and EDCV 09-0216-VAP, 2010 WL 144067, *5 (C.D. Cal. Jan. 7, 010) (Legal Aid of Northwest Texas a *cy pres* beneficiary); *Parker v. Time Warner Entertainment Co., L.P.*, 31 F.Supp.2d 242, 250 (E.D.N.Y. 2009) (*cy pres* distribution to Samuelson Law, and the Technology & Public Policy Clinic at Boalt Hall Law School); *Gilliam v. Addicts Rehabilitation Center Fund*, Case No. 05 Civ 3452(RLE), 2008 WL 782596, *3 (S.D.N.Y. Mar. 24, 2008) (remaining *cy pres* award to be paid to The Legal Aid Society); *Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, Case No. 01-2118, 02-1018, 2007 WL 2007447, at *5 (D.D.C. July 10, 2007) (*cy pres* distribution to go to a newly created endowment fund at The George Washington University Law School); *Superior Beverage Co.*, 827 F.Supp. at 478-79 (*cy pres* distributions given to legal aid bureau and various law school programs, among other beneficiaries).

As a part of the proposed settlement agreement, the parties have agreed that at least forty percent (40%) of the Rule 23 Class Members Settlement Fund must be paid and negotiated. The Rule 23 Class Members Settlement Fund is a total of one hundred seventy four thousand five hundred dollars ($174,500.00). Accordingly, at least sixty-nine thousand eight hundred dollars ($69,800.00) must be paid and negotiated. The parties settlement agreement provides that if at least $69,800.00 of the Rule 23 Class Members Settlement Fund is not paid and negotiated, then the difference between $69,800.00 and the amount paid and negotiated will be paid to the an entity or organization proposed by Named Plaintiff and Class Counsel, and approved by the Court, as a *cy pres* award.

Named Plaintiff and Class Counsel have proposed that the Kentucky Equal Justice Center be approved as an appropriate *cy pres* recipient to receive any such funds. An organization that

conducts legal advocacy work throughout Kentucky, the Kentucky Equal Justice Center was formed in 1976 to work with all the civil legal services programs in Kentucky on things best done cooperatively, from training to brief banks to advocacy in Frankfort.  *See* Declaration of Ben Carter, attached to this Memorandum as **Exhibit 2**, at ¶ 1.  The Kentucky Equal Justice Center provides legal advocacy for low income and other vulnerable members of society. *Id.* ¶ 2. This work includes operating an immigration law clinic, working to remove poverty-related barriers to accessing the courts in rural counties, and consumer advocacy.  *Id.*  For these reasons, Named Plaintiff and her counsel propose Kentucky Equal Justice Center as the *cy pres* recipient for this settlement.

## VII.   <u>CONCLUSION</u>

For all the reasons discussed above, the Parties request that Court issue an Order:

- Certifying, for settlement purposes only, the Rule 23 Class.

- Appointing the Named Plaintiff as the Class Representative of the class.

- Appointing the BJMG as Class Counsel for the class.

- Preliminarily approving the Agreement with regard to the Rule 23 Class.

- Approving transmission by the Plaintiff to the Rule 23 Class of the Notice Materials pursuant to the schedule set forth in the Agreement.

- Setting a Fairness Hearing for final approval of the Agreement and the Rule 23 Class Settlement.[8]

  Approving transmission by the Claims Administrator to the formerly employed Rule 23 Class Members of the Settlement Claim Postcard pursuant to the schedule set forth in the Agreement.

Date: February 15, 2019                              Respectfully submitted,

---

[8]     Defendants will send notice of the Settlement to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) days after the submission of this Motion to the Court.  The Parties request that, in order to comply with CAFA, the Court schedule the Fairness Hearing no sooner than 90 days after the CAFA notice.

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)\***
**JOSHUA A. FRANK (No. 33294)\***
BARRETT JOHNSTON
MARTIN & GARRISON LLC
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019 a true and exact copy of the foregoing *Memorandum in Support of Joint Motion for Approval of Section 216(b) Settlement* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.


*/s/* David W. Garrison
DAVID W. GARRISON
**BARRETT JOHNSTON**
**MARTIN & GARRISON, LLC**

37447784.1